**STATE of Missouri, Plaintiff-Respondent,**

v.

**Billie Roten SMITH, Defendant-Appellant.**

**No. 7662.**

Springfield Court of Appeals.

Missouri.

Feb. 10, 1958.

Roy Coyne and Max Patten, Joplin, for appellant.

William C. Myers, Jr., Webb City, Pros. Atty., Jasper County, for respondent.

McDOWELL, Judge.

Defendant, appellant, was convicted by a jury in the Circuit Court of Jasper Coun-

ty, Missouri, of a misdemeanor, operating a bawdyhouse, and fined $1,000. She appealed to this court.

The information was brought under § 563.630 RSMo 1949, V.A.M.S., and (caption omitted) is as follows:

"John R. Martin, Asst. Prosecuting Attorney within and for the County of Jasper, in the State of Missouri, upon his oath, informs the Court and charges that on or about the *11th* day of *August, 1956* in the County of Jasper and State of Missouri

"Billie Roten Smith, on divers days and times between February 1, 1956, and August 12, 1956 at the County aforesaid, did unlawfully keep and maintain a bawdy house, commonly called a house of ill-fame, by then and there keeping, suffering to remain therein for the purpose of prostitution and lewdness, divers lewd men and women, whose names to John R. Martin, Asst. Prosecuting Attorney aforesaid, are unknown, and by then and there permitting and suffering divers other lewd, dissolute men and women to resort to said house and come together therein for the purpose of illicit sexual intercourse and there to remain whoring, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

█ Under assignments of error, appellant first contends that the trial court erred in permitting witnesses Melvin Warner, Joe League, Bill Clements and others to testify that the house owned and occupied by the appellant had a bad reputation.

Witnesses Warner and Clements testified to the reputation of the property as being a whorehouse and place of prostitution. Witness Joe League was not acquainted with the reputation of the property.

To support this alleged error, appellant cites one case, State v. Bean, 21 Mo. 267. An examination of this authority shows that the trial court instructed the jury: "A

house can have no character, good or bad; the jury will therefore exclude the testimony upon that question; but in passing upon the question whether the house above referred to was used for the purposes of a bawdy house, the characters of the inmates and the persons resorting to the same is proper for the consideration of the jury."

The court refused to give an instruction for the defendant that "The evidence in regard to the reputation of the house must be excluded as illegal." On appeal, Judge Ryland stated: "The instruction which the defendant asked, and which was refused by the court, had already been, in substance, given to the jury."

The case does not support appellant's contention here. We find that Missouri follows the law as declared in 20 Am.Jur., § 460, p. 407, which stated that by weight of authority, the reputation of a house is admissible upon the issue as to whether it is a disorderly house. See Disorderly Houses, 17 Am.Jur. § 18, p. 203.

In State v. Hesselmeyer, 343 Mo. 797, 123 S.W.2d 90, 94(2, 3) the law is stated:

" * * * Among the facts that may be proven are: that lewd persons resort to or congregate at the house; prevalence of disorder; the reputation of the house and of the frequenters and inmates". 27 C.J.S. Disorderly Houses § 14(b), p. 327.

This court, in State v. Bennett, Mo.App., 118 S.W.2d 1042, held testimony that the house bore a reputation for being a bawdyhouse was not error.

In State v. Froemsdorf, 218 Mo.App. 481, 279 S.W. 181, 183(2), the law was stated:

"Appellant's next insistence is that the court erred in permitting evidence to go to the jury as to the reputation of defendants' house. It has been definitely ruled in this state that the prosecution in a case of this character may show the reputation of the house, * * * * ". State v. Davis, Mo.App., 192 S.W.2d 39.

This alleged error is without merit.

Under assignment of error No. II, the same contention is made as in the first allegation of error, in which we held there was no merit.

Under assignment of error No. III, appellant complains of error in refusing defendant's instruction No. 6. This instruction was given by the court.

■ Under alleged error No. IV, appellant contends the trial court erred in giving instruction No. 3 in that it is not complete and does not properly define bawdyhouse.

The instruction reads: "The Court instructs the jury that a bawdy house, or brothel, is a house of ill fame, kept for the resort and commerce of lewd people of both sexes."

Appellant says, in her brief: "Defendant feels that the instruction given by the Court, being Instruction No. 3 does not properly define a bawdy house and is not complete or does not have all the elements required in Section 563.630 of the Revised Statutes of Missouri [V.A.M.S.]."

This alleged error is without merit. The same definition contained in instruction 3 was approved in State v. Price, 115 Mo. App. 656, 92 S.W. 174. For other definitions see State v. Malloch, 269 Mo. 235, 190 S.W. 266, 267; State v. Keithley, 142 Mo. App. 417, 127 S.W. 406, 408; 5 Words and Phrases, Bawdyhouse, page 217.

■■ In allegation of error No. V, it is contended that the information does not charge defendant with operating a bawdyhouse and is defective and ambiguous and does not properly charge the operation or running of a bawdyhouse.

The operation of a bawdyhouse is a statutory offense and the information must substantially follow the language of the statute if that language be sufficient to inform defendant of the offense charged. It must set out the constituent facts and circumstances necessary to inform the defendant of the offense with which he is charged. § 563.-630 RSMo 1949, V.A.M.S.; State v. Anderson, Mo.Sup., 232 S.W.2d 909.

In State v. Crawford, Mo.Sup., 251 S.W.2d 76, 77, the court stated:

"We think this information was sufficient and that it fully informed the defendant of the crime charged against him. The rules concerning the sufficiency of an information charging a statutory offense were recently restated in State v. Anderson, Mo. Sup., 232 S.W.2d 909, 911, as follows: 'An indictment therefor must "substantially follow the language of the statute" (if that language or the statutory terms used be sufficient to inform defendants of the offense with which they are charged) or it must set out the constituent facts and circumstances necessary to inform defendants of the offense with which they are charged. State v. Ross, 312 Mo. 510, 279 S.W. 411, 413. An indictment is sufficient if it contains every essential element of the offense as the same is defined by the statute.' "

In United States v. Clark, D.C., 10 F.R.D. 622, 624, the rule as to the sufficiency of an information was stated: "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' " State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198; State v. Maher, 232 Mo.App. 998, 124 S.W.2d 679.

State v. Granger, Mo.App., 199 S.W.2d 896, 899, states:

"The same strictness of pleadings is not required in misdemeanors as in felonies, and where the statute describes and defines the offense, an information charging

the offense in the language of the statute is sufficient. State v. Ladd, Mo.App., 216 S.W. 1004. * * * And the further rule is that an information will not be held bad after verdict unless it fails in some essential averment necessary in the description of the offense. * * *"

State v. Newman, 152 Mo.App. 144, 132 S.W. 753, decided by our court, stated the law thus: "* * * The general rule is that it is sufficient, in an indictment charging the commission of an offense created by statute, to follow the language of the statute; and this indictment fully complies with that requirement."

The information in the instant case follows the language of the statute and contains all of the essential elements constituting the offense charged.

▪ The last assignment of error is that the court erred in permitting Billy Clements to testify in this case; that a proper foundation was not laid for the admission of his testimony in that he was asked, out of the hearing of the jury, if he had ever been adjudged insane and his answer was "No", when, as a matter of fact, he was on December 8, 1953, in the Probate Court of Jasper County, Missouri, adjudged insane; that after the trial counsel learned that Clements had been adjudged insane and that the court erred in permitting Clements to testify and in failing to properly examine the witness; that his evidence prejudiced the jury against defendant.

The record shows that witness, Billy Clements, was called to the witness stand; that upon the request of appellant's attorney, the jury was excused from the courtroom and qualifying questions were asked the witness.

"Q. Have you ever been adjudged insane by the Probate Court and placed in an institution? A. No, sir.

"Q. Even been in any Court? A. No, sir.

"Q. Adjudged insane? A. No, sir.

"The Court: Do you have any evidence you want to offer?

"Mr. Patten: No, I just heard that."

This court cannot convict the trial court of error when the record fails to show that the witness Clements had ever been adjudged insane in any court. The mere statement, in the brief of appellant, that the witness had lied and had been convicted is entirely outside the record and cannot by this court be considered.

Judgment affirmed.

STONE, P. J., and RUARK, J., concur.